NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE ANTHONY JEREMIAH BAYNE**

---

2012-1640

---

Appeal from the United States Patent and Trademark Office, Board of Patent Appeals and Interferences in serial No. 11/871,992.

---

Decided: June 5, 2013

---

ANTHONY J. BAYNE, of Lomita, California, pro se.

RAYMOND T. CHEN, Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia. On the brief were MICHAEL S. FORMAN and SYDNEY O. JOHNSON, JR., Associate Solicitors.

---

Before DYK, BRYSON, and WALLACH, *Circuit Judges.*

PER CURIAM.

Anthony Jeremiah Bayne filed Patent Application No. 11/871,992, entitled "Automated Qualifying of a Customer To Receive a Cash Loan at an Automated Teller Machine" ("the '992 application"). The examiner rejected claims 1, 4, 21, and 23, along with other claims, as obvious under 35

U.S.C. § 103(a). The Board of Patent Appeals and Inter-ferences ("Board") affirmed.[1] We *affirm* the Board.

BACKGROUND

The specification of the '992 application describes the problems that arise when a bank or credit union customer seeks to withdraw more cash from an automated teller machine ("ATM") than his or her account contains, and discusses the shortcomings of two prior art solutions: short-term loans provided by third-party payday lenders, and "overdraft protection"—an umbrella term describing various services provided by the bank or credit union for dealing with insufficient funds in the account. As an alternative, the specification discloses a method by which a customer's attempt to overdraw the account triggers a process of qualifying the customer for a short-term loan from the bank or credit union, proposing the loan terms to the customer, and, if the customer agrees to the terms, making the loan proceeds available on the spot.

The United States Patent and Trademark Office is-sued a final decision in September 2009, rejecting claims 1, 4, 21, and 23 as obvious over a combination of prior art references. These references included U.S. Patent No. 7,428,495 ("Dhar"), which discloses an "automated, on-line . . . system" for processing loan applications, as well as the use of ATMs to "offer loan services to customers at the time of . . . withdrawal of cash," *id.* col. 1 ll. 34-36, col.

---

[1]    The Leahy-Smith America Invents Act renamed the Board the Patent Trial and Appeal Board. *See* Pub. L. No. 112-29, § 7(a)(1), 125 Stat. 284, 313 (2011). The Act also amended the former section 103(a) and eliminated the subsections that followed. *See id.* § 3(c), 125 Stat. at 287. No substantive changes were made of relevance to this appeal.

2 l. 30; U.S. Patent Application Pub. No. 2006/0059085 ("Tucker"), which discloses a "method . . . for on-demand short term loan processing [using] computing equipment," *id.* at [57]; and U.S. Patent Application Pub. No. 2009/0055313 ("Elterich"), which discloses an "automated [financial] account management system," *id.* at [57]. The examiner found that each of the limitations in Bayne's claims was disclosed by the various references, and that a skilled artisan would have been motivated to combine the references to achieve the claimed inventions. Bayne appealed to the Board, which affirmed the examiner's rejections. *Ex parte Bayne*, No. 2010-8234 (B.P.A.I. Dec. 12, 2011). Bayne appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A) and 35 U.S.C. § 141(a).

DISCUSSION

"Whether a claimed invention is unpatentable as obvious under [35 U.S.C.] § 103 is a question of law based on underlying findings of fact." *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). We review the Board's legal conclusions of obviousness de novo and its underlying factual determinations for substantial evidence. *Id.*

I. Claim 1

Claim 1 recites:

A method for performing an entire loan process during an ATM withdrawal that automatically determines whether a customer qualifies to receive a *cash loan* while the customer is at the ATM attempting a withdrawal, comprising:

determining an amount of cash selected at an ATM for withdrawal from a customer's account;

determining the account's available cash for withdrawal;

determining whether the amount selected exceeds the account's available cash;

automatically determining by a processor whether the customer qualifies to receive a loan, when the amount selected exceeds the account's available cash;

offering the customer a *cash loan* subject to terms via the ATM, when the customer qualifies to receive a *cash loan*;

*presenting loan terms to the customer via the ATM, when the customer indicates an interest in receiving the cash loan*;

determining if the customer accepts the terms presented; and

providing the *cash loan* to the customer via the ATM, when the customer accepts the terms presented.

*Bayne*, No. 2010-8234, slip op. at 2 (B.P.A.I. Dec. 12, 2011) (emphases added). The Board affirmed the examiner's rejection of claim 1 as obvious over Dhar and Tucker. On appeal, Bayne argues that two limitations are absent from the prior art: "presenting loan terms to the customer via the ATM, when the customer indicates an interest in receiving the cash loan," and "cash loan."

### A. "Presenting loan terms . . ."

The Board found that "Dhar discloses that it is well-known for ATM machines [sic] to offer loan services to customers at the time of . . . withdrawal of cash"; "Tucker discloses that the terms of a loan are communicated to a customer as part of a loan process"; and "Tucker discloses [that] the terms of the loan . . . are determined immediately, such that the customer is not required to wait for human input or involvement." *Id.*, slip op. at 5 (quotation marks and alteration omitted). Each of these findings is

supported by the cited references. *See* Dhar col. 1 ll. 34-36; Tucker ¶¶ 47, 49. The Board also found that

> one of ordinary skill in the art would recognize [that] Tucker's [Internet-based] automated loan terms process lends itself to application to the ATM loan process disclosed by . . . Dhar, such that presenting loan terms via the ATM would be an obvious application of Tucker's loan term presentment to the use of an ATM to deliver loans.

*Bayne*, No. 2010-8234, slip op. at 11 (B.P.A.I. Dec. 12, 2011).

Bayne argues that even if Dhar discloses offering a loan at an ATM and Tucker discloses presenting terms as part of the process of offering a loan, neither Tucker nor Dhar specifically "mention[s] presenting loan terms to a customer via an ATM." Bayne Br. 12 (quotation marks omitted). Bayne ignores the fundamental principle that a rejection under section 103 can be, and often is, based on "[t]he combination of familiar elements" found in different prior art references. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007). We see no error in the Board's determination.

## B. "Cash loan"

Next, Bayne argues that the prior art does not disclose the "cash loan" limitation. The Board found this limitation disclosed by Tucker, which teaches the step of "'immediately depositing a loan amount into the loan account such that the loan amount is immediately accessible by the customer through [an] ATM card.'" *See Bayne*, No. 2010-8234, slip op. at 5-6, 12 (B.P.A.I. Dec. 12, 2011) (quoting Tucker ¶ 35). In describing this step, Tucker discloses that depositing the loan "enable[s] the customer to immediately receive the approved loan amount, *in the form of cash*, from any ATM." Tucker ¶ 53 (emphasis

added). The Board did not err in concluding that the loan disclosed by Tucker is a "cash loan."

## II. Claim 21

Claim 21 is similar to claim 1, except that the loan offer is triggered by a request to withdraw an amount that is "less than the account's available cash [but] would reduce the account's available cash below a threshold amount." *See Bayne*, No. 2010-8234, slip op. at 3 (B.P.A.I. Dec. 12, 2011). The examiner rejected this claim over a combination of Dhar, Tucker, and Elterich. The Board affirmed, relying on its finding that "Eldrich [sic] discloses using a threshold to [prevent] an available cash balance from being reduced below a threshold amount." *Id.*, slip op. at 7, 24-25.

Elterich discloses that a financial management system may be used to avoid bank-imposed maintenance fees that result if an account balance falls below a pre-defined minimum:

> If the user identifies any accounts that the user would like to maintain a minimum balance, the [system] asks the user to identify the minimum amount the user would like to maintain on the account. After the user identifies the minimum balances, the [system] then prompts the user to identify accounts . . . from which the user would like the system to transfer money if an account balance falls below the user-defined minimum.

Elterich ¶ 35.

Bayne argues that Elterich does not disclose claim 21's limitation of offering a loan when the amount to be withdrawn is "less than the account's available cash [but] would reduce the account's available cash below a threshold amount," because "Elterich acts only *after* a balance has fallen below a threshold amount to remedially raise the balance to or above the minimum account value."

Bayne Br. 23 (quotation marks omitted, emphasis added). The Board found, however, that "one of ordinary skill would recognize . . . that [transferring money after the account balance falls] is effectively the same as doing the transfer nearly instantaneously before the drop in the balance." *Bayne*, No. 2010-8234, slip op. at 24 (B.P.A.I. Dec. 12, 2011).

Substantial evidence supports the Board's finding that a skilled artisan would have known to modify the method disclosed in Elterich by reversing the order of outgoing and incoming transactions. "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR*, 550 U.S. at 421. Moreover, where, as here, "the references and the invention are easily understandable," the Board does not err by relying on its "common sense" to make such a determination. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1238-42 (Fed. Cir. 2010).

Bayne also argues that a skilled artisan would not have been motivated to combine Dhar, Tucker, and Elterich to achieve the invention claimed in claim 21. The Board affirmed the examiner's finding that

> [i]t would have been obvious at the time the invention was made to a person having ordinary skill in the art to combine the disclosures of Tucker, Dhar, [and] Elterich to transfer funds between accounts (e.g., personal loan and checking account) to maintain the minimum level of balance in [a] checking account to prevent overdraft fee[s] and charges.

J.A. 135; *see Bayne*, No. 2010-8234, slip op. at 7, 25 (B.P.A.I. Dec. 12, 2011). On appeal, Bayne argues that this finding of motivation was improper because this motivation does not appear in the claim text—that is, the claim language does not suggest "a transfer [of] funds between accounts." A motivation to combine prior art references need not be disclosed in the claim itself. *See*

*KSR*, 550 U.S. at 419-20. Here, the examiner correctly observed that the method disclosed by Elterich—avoiding fees by transferring funds between bank accounts—lent itself to the modification of using the loan accounts disclosed by Dhar and Tucker as the "source accounts," *see* Elterich ¶ 35. Substantial evidence therefore supports the Board's finding that a skilled artisan would have been motivated to combine the references to arrive at the claimed invention.

### III. Claims 4 and 23

Claims 4 and 23 are substantively identical dependent claims that depend from claims 1 and 21, respectively. Each claim adds the limitation that the term "available cash," as used in the independent claim, refers to "the customer's account balance, *exclusive of any overdraft line of credit, bounce check protection, or overdraft transfer protection*." J.A. 188, 192 (emphasis added).

The Board affirmed the examiner's rejection of claims 4 and 23 over paragraph 8 of Tucker, which discloses short-term bank loans as having advantages over prior art methods of covering shortfalls in the account. In particular, paragraph 8 discloses the advantages of short-term bank loans for customers who have alternative methods of covering shortfalls available to them but do not avail themselves of those alternative methods. The Board did not err in concluding that Tucker disclosed the additional limitation of claims 4 and 23.

We have considered Bayne's other arguments, and find them to be without merit.

### **AFFIRMED**